IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 11-cv-01066-LTB-KLM

SHONYA POOL,

        Plaintiff,

v.

WELLS FARGO BANK, N.A.,

        Defendant.
_____

ORDER
_____

This matter is before me a Motion for Summary Judgment [**Doc # 19**] filed by Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), seeking judgment in its favor and dismissal of the claims asserted against it by Plaintiff, Shonya Pool, in her amended complaint. In so doing, I also address Well Fargo's pending Motion to Dismiss. [**Doc # 11**] Oral arguments would not materially assist me in my determination. After consideration of the parties' arguments, and for the reason stated, I GRANT Defendant's motion seeking summary judgment, and I DENY AS MOOT its motion seeking dismissal.

**I. Facts**

The underlying relevant facts of this case are as follows. Plaintiff and her former husband executed a promissory note in the amount of $172,000 in December 2005, when they re-financed their residence. After the couple divorced in 2009, Plaintiff contacted Wells Fargo – the servicer of her loan – in November of 2009 to inquire about the possibility of a home loan modification under the Home Affordable Modification Program ("HAMP"). HAMP is a U.S.

Treasury program in which Wells Fargo received incentive payments for providing affordable mortgage loan modifications to eligible borrowers. After reviewing her financial situation, a Wells Fargo representative informed Plaintiff that she qualified for a "trial modification period" under HAMP and, as such, she could make reduced payments on her loan. Plaintiff asserts that during this conversation, the representative told her that "so long as she made the 3 trial period payments and submitted all the required documentation, her loan would be modified."

Wells Fargo then sent Plaintiff a document entitled "Home Affordable Modification Program Loan Trial Period (Step One of Two-Step Documentation Process)," which I will refer to as the Trial Period Plan agreement or the "TPP". On December 7, 2009, Plaintiff and her ex-husband signed the TPP – which set forth the amount ($744.00 per month) and terms of the three reduced payments to be made by Plaintiff on January, February and March of 2010 – and returned it to Wells Fargo. Plaintiff made the three reduced payments and, after not hearing anything, contacted Wells Fargo in March of 2010. The Wells Fargo representative Plaintiff spoke with at that time indicated that her request for a modification was still under review, and told her she should continue to make her reduced payments. Approximately five months later, in August 2010, Plaintiff received a notice of foreclosure from Wells Fargo indicating that her reduced payments constituted a "default" and, as such, it accelerated the balance due on the note and her home was scheduled for foreclosure.

Plaintiff subsequently filed her amended complaint seeking damages for: Fraud; Promissory Estoppel; Violations of the Colorado Consumer Protection Act ("CCPA"); and Violations of Colo. Rev. Stat. §§ 38-40-103 & -104. Plaintiff also seeks an order directing Wells Fargo to specifically perform a loan modification agreement under HAMP. [Doc #9] In

response, Wells Fargo has filed the motions at issue seeking dismissal of all of Plaintiff's claims. [Docs # 11 & 19]

## II. Summary Judgment Standard

When deciding a motion for summary judgment under Fed. R. Civ. P. 56, summary judgment shall be granted for the movant if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Id.* 477 U.S. at 323. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the plaintiff and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for the plaintiff. *Id.* 477 U.S. at 252; *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992).

I note that a federal court with diversity-based jurisdiction over a case, as is applicable here, applies the laws of the forum state in analyzing the underlying claims. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir.1995).

### III. Colorado Credit Agreement Statute of Frauds

I first address Wells Fargo's argument – asserted in both its motion to dismiss and for summary judgment –  that Plaintiff's fraud, promissory estoppel and CCPA claims are barred by the Colorado Credit Agreement Statute of Frauds.  *See* Colo. Rev. Stat. § 38-10-124.  That statute provides, in pertinent part, that "no debtor or creditor may file or maintain an action or a claim relating to a credit agreement involving a principal amount in excess of twenty-five thousand dollars unless the credit agreement is in writing and is signed by the party against whom enforcement is sought."  Colo. Rev. Stat. § 38-10-124(2).  Section 38-10-124 was enacted by the General Assembly in 1989 in an effort to discourage lender liability litigation and to promote certainty into credit agreements involving a principal amount of more than $25,000.  *Norwest Bank Lakewood, Nat. Ass'n v. GCC Partnership*, 886 P.2d 299, 301 (Colo. App.1994).

A. Oral Representations:

Wells Fargo argues that Plaintiff's claims in this case – for fraud, promissory estoppel and violations of the CCPA – are based on her allegation that a Wells Fargo representative orally misrepresented to her that "so long as she made the 3 trial period payment and submitted all the required documentation, her loan would be modified."

The parties do not dispute that the misrepresentation upon which Plaintiff's claims are based constitute a "credit agreement" in excess of $25,000, and that the parties here are a "creditor" and a "debtor" under the statute.  *See Ivar v. Elk River Partners, LLC,* 705 F.Supp.2d 1220, 1228 (D.Colo. 2010).  In addition, Plaintiff does not dispute that the alleged oral representation made to her by a Wells Fargo representative could not, standing alone, support her claims in this case under § 38-10-124(2).  Rather, Plaintiff argues that the statute does not bar

evidence of the oral representation because it serves as extrinsic evidence to explain the written promises made in the agreement.

In support of her argument, Plaintiff refers me to *Fisher v. Community Banks of Colorado,* in which a division of the Colorado Court of Appeals reversed the trial court's ruling that § 38-10-124(2) barred evidence of prior and contemporaneous statements suggesting that both parties did not intend to include the written default rate set forth in their loan documents. On appeal, the division held that § 38-10-124(2) did not "preclude relevant extrinsic evidence offered to resolve the intended meaning of a facially ambiguous credit agreement." *Fisher v. Community Banks of Colorado,* ___ P.3d. ___, 2010 WL 3432205 (Colo. App. 2010)(opinion not released for publication). I note that the Colorado Supreme Court has granted a petition for writ of certiorari on the specific issue of "[w]hether the court of appeals erred in holding that § 38-10-124(2), allowed the introduction of extrinsic evidence to interpret an allegedly ambiguous contract." *Fisher v. Community Banks of Colorado, Inc.*, 2011 WL 882444 (Colo. Mar 14, 2011).

Plaintiff's theory of her case, however, is not that the TPP is an ambiguous contract that needs extrinsic evidence in order to be interpreted. Rather, Plaintiff's claims are based on her allegations that Wells Fargo's misrepresentations – that if she made the reduced mortgage payments and that the information she provided was accurate, she would be offered a Loan Modification Agreement under HEMP – constituted fraud by Wells Fargo who, in fact, intended for Plaintiff's loan to go into default and foreclosure. Specifically, her theory is that Wells Fargo "induced a default" on her loan in order to force a foreclosure and, as a result, generate increased fees. Therefore, I conclude that the Court of Appeals holding in *Fisher v. Community Banks of*

*Colorado*, *supra*, is not applicable here and that § 38-10-124(2) bars evidence of any oral representation made to Plaintiff, and relied upon by her to support her fraud, promissory estoppel and CCPA claims.  *See Ivar v. Elk River Partners, supra,* 705 F.Supp.2d at 1230 (ruling that the plaintiff's misrepresentation and consumer protection state law claims were barred by § 38-10-124(2) pursuant to its broad language in that they "relate to" a credit agreement); *Hewitt v. Pitkin County Bank & Trust Co.*, 931 P.2d 456 (Colo. App. 1995) (dismissing the plaintiff's breach of contract and various tort claims stemming from a bank's alleged oral promises to modify a promissory note under § 38-10-124(2)); *see also* Colo Rev. Stat. § 38-10-124(3)("[a] credit agreement may not be implied under any circumstances, including . . . by promissory estoppel").

B.  Written Representations:

To the extent that Plaintiff argues that the written representations in the TPP would support her fraud, promissory estoppel and CCPA violation claims, I again find that any such representations are also barred by § 38-10-124(2), which requires not only that the credit agreement at issue is in writing, but also that it "is signed by the party against whom enforcement is sought."  Colo. Rev. Stat. § 38-10-124(2).

In support of her claims, Plaintiff relies on language in the TPP that states:  "[i]f I am in compliance with the Loan Trial Period and my representations in Section 1 continue to be true . . . then the Lender will provide me with a Loan Modification Agreement, as set forth in Section 3, that would amend and supplement" the Loan Documents (consisting of her mortgage and note on her property).  Section 3 also states in relevant part that:  "[i]f I comply with the requirements in Section 2 and my representations in Section 1 continue to be true . . ., the Lender will send me a

Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount . . .".

It is undisputed that Wells Fargo drafted the TPP, and sent it to Plaintiff who, in turn, signed and dated it and returned it to Wells Fargo. The signature block for the "Lender" has "Wells Fargo Home Mortgage" typed in, but there is no signature in the underlying "By: _____" line, nor is the "Date" line filled in. Plaintiff contends, without supporting argument or legal authority, that "Wells Fargo did in fact sign [the TPP] by typing in 'Wells Fargo Home Mortgage.'"  [Doc # 24, pg 5, ¶12, 13]

However, I agree with Wells Fargo that the "signature block [on the TPP] does not contain a signature by Wells Fargo Home Mortgage." [Doc # 27, pg 5-6, ¶12]   In *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547 (7th Cir. March 7, 2012), the Seventh Circuit reviewed the procedure to be used by loan servicers when assessing modifications under HAMP. The Court determined that after the borrower met "certain threshold requirements" (such as that the loan originated on or before January 1, 2009) the servicer then calculates a modification amount using a "waterfall" method. *Wigod v. Wells Fargo, supra,* 673 F.3d at 556-57 (the waterfall method applies enumerated changes in a specified order until the borrower's monthly mortgage payment ratio dropped as close as possible to 31 percent)(*citing* U.S. Dep't of the Treasury, Home Affordable Modification Program Supplemental Directive 09–01 (Apr. 6, 2009). Then, "[a]fter determining a borrower was eligible, the servicer implement[s] a Trial Period Plan (TPP) under the new loan repayment terms it formulated using the waterfall method." *Id.*

The Seventh Circuit then reviewed the language in the TPP, which contained the same language at issue here; specifically, introductory language of the TPP which states that: "I

understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the [permanent modification] Offer or will send me written notice that I do not qualify for the Offer." The TPP in this case further states that: "[t]his Plan will not take effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan with the Lender's signature."

Pursuant to the language contained in the TPP, the *Wigod v. Wells Fargo* Court determined that at the time Wells Fargo countersigned the TPP – after the plaintiff signed it and sent it back – Wells Fargo communicated to the plaintiff that she qualified for HAMP and would receive a permanent "Loan Modification Agreement" after the trial period, provided she was "in compliance with this Loan Trial Period and [her] representations . . . continue[d] to be true in all material respects." *Wigod v. Wells Fargo, supra,* 673 F.3d at 562. As such, the Court ruled that the plaintiff stated a breach of contract claim, under Illinois law, based on the TPP. *Id.; compare with Rummell v. Vantium Capital, Inc.,* 2012 WL 2564846 (E.D. Mich. 2012)(not published)(ruling that because the servicer did not countersign the TPP, and did not return a signed copy to the plaintiffs, there was no binding contract); *Soin v. Federal Nat. Mortg. Ass'n,* 2012 WL 1232324 (E.D.Cal. 2012)(not published).

Based on this rationale, I conclude that because the HAMP process requires the counter signature of the servicer – after the TPP is signed and returned by the borrower – and Plaintiff here neither alleges nor provides me with any evidence that Wells Fargo countersigned the TPP, I find that the written representations in Plaintiff's TPP are likewise barred by § 38-10-124(2), which requires that a credit agreement be "signed by the party against whom enforcement is sought." Therefore, because I find that both the oral and written misrepresentations relied on by

8

Plaintiff in support of her fraud, promissory estoppel and CCPA violation claims are prohibited by § 38-10-124(2), I grant Wells Fargo's motion seeking summary judgment as to those claims.

### IV. Violations of Colorado Revised Statute Sections 38-40-103 and 38-40-104.

I next address Plaintiff's remaining claim that Wells Fargo violated Colorado statutes that govern the servicing of mortgages and deeds of trust. Plaintiff asserts that Wells Fargo violated Colo. Rev. Stat. §§ 38-40-103 and -104 by failing to provide to her information she requested about the servicing of her mortgage loan.

Section 38-40-103(2) provides, in pertinent part, that:

> The servicer of a loan shall respond in writing within twenty days from the receipt of a written request from the debtor . . . for information concerning the debtor's loan, which is readily available to the servicer from its books and records and which would not constitute the rendering of legal advice.

Section 38-40-104(1) further provides that:

> If any applicant or debtor is aggrieved by a violation of section . . . 38-40-103, which violation is not remedied in a reasonable, timely, and good faith manner by the party obligated to do so, and after a good faith effort to resolve the dispute is made by the debtor or borrower, such debtor or borrower may bring an action in a court of competent jurisdiction for any such violation, and, if the court finds that actual damages have occurred, the court shall award in addition to actual damages the amount of one thousand dollars, together with and costs and reasonable attorney fees.

Plaintiff sent a letter to Wells Fargo dated November 29, 2010, disputing fees that Wells Fargo claimed were owed on the "proof of claim" it filed in Plaintiff's bankruptcy case. On December 27, 2010, Wells Fargo responded to the letter. Plaintiff then sent a follow up letter in January 2011, and Wells Fargo again responded on February 4, 2011. Plaintiff contends that

Wells Fargo failed to answer several questions she asked about her loan. Specifically, she maintains that it did not provide her with: 1) the name of the company that it paid to perform a property inspection; 2) the name of the company that it paid to conduct a Broker Price Opinion; 3) a copy of the Broker Price Opinion; and 4) information about any law firms it paid to perform work on her account, including the amount of any retainer. [Doc # 9, ¶ 68]

Wells Fargo asserts that it did not violate § 38-40-103 because its responses were sufficient. Wells Fargo accurately notes that no Colorado court has yet interpreted the scope of §38-40-103, which requires a servicer to provide a debtor "information concerning the debtor's loan." Wells Fargo argues that "it is impractical to believe that the statute would require services to provide debtors *whatever* information they request concerning their loan" as "[s]uch a broad statutory mandate would impose on servers an unbearable administrative burden." [Doc # 27]

In support of this assertion, Wells Fargo refers me to similar provision contained in the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601, *et seq.* ("RESPA"), which creates a duty only to provide information related to "the servicing of the loan." 12 U.S.C. § 2605(e)(1)(A) and §2605(i)(3). As such, Wells Fargo argues that its obligation to respond under §38-40-103 should be limited, as it is in RESPA, to reporting borrower payments, the distribution of the payments between principal and interest, and escrow disbursements to pay property taxes. *See generally DeVary v. Countrywide Home Loans, Inc.,* 701 F.Supp.2d 1096, 1108 (D.Minn. 2010)(noting that a request for information regarding financing of the original loan, rather than information regarding the servicing of that loan, is not covered by RESPA). Because it is undisputed that Plaintiff received an accounting of her payments and disbursements, and because the information she did not receive pertained to her subsequent

10

bankruptcy filing, not her foreclosure, Wells Fargo asserts that it is outside of the scope of her loan servicing and thus not covered by § 38-40-103. Plaintiff argues, in response, that while an information request under RESPA may be limited, the language of the Colorado statute § 38-40-103 – "information concerning the debtor's loan" – is broader and more inclusive than that of RESPA – information related only to "the servicing of the loan."

    I do not reach the question of the scope of § 38-40-103 in this matter, however, because I agree with Wells Fargo that Plaintiff's request was clearly made pursuant to RESPA. It is undisputed the Plaintiff's initial letter indicated that it was a "qualified written request" made pursuant to RESPA, specifically to 12 U.S.C. § 2605(e). Both letters were sent to the address designated by Wells Fargo to receive qualified written requests under RESPA. And, as Plaintiff admitted in her deposition testimony, neither letter mentioned or referenced § 38-40-103 or § 38-40-104. As such, Wells Fargo maintains that Plaintiff is now precluded from arguing that her request was not made under RESPA, but was actually made pursuant to § 38-40-103. I agree. Even if Wells Fargo had a broader duty to respond to borrower inquiries under § 38-40-103, under the circumstances here – in which the request was clearly made under RESPA, and did not mention that it was being made under Colorado law – I conclude that Wells Fargo cannot be required to respond to the request as if it was made under § 38-40-103. Therefore, I conclude that Wells Fargo is entitled to judgment in its favor, as a matter of law, on Plaintiff's claim for relief pursuant to §§ 38-40-103 and -104.

ACCORDINGLY, I GRANT the Motion for Summary Judgment [**Doc # 19**] filed by Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), and I DISMISS the claims asserted against it by Plaintiff, Shonya Pool. As such, I DENY AS MOOT Defendant's pending Motion to Dismiss [**Doc # 11**].

Judgment shall enter for Defendant and against Plaintiff, with costs awarded Defendant.

Dated: August   10  , 2012 in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE